ALABAMA & VICKSBURG RAILWAY CO. *v.* MARY BEARDSLEY.

1. MARRIAGE AND DIVORCE. *Presumption of divorce.*

   A divorce from a former wife who is still living will, in the absence of other evidence, be presumed upon due proof of the husband's second marriage.

2. SAME. *Burden of proof. Negative fact.*

   A marriage duly proved will be presumed valid, although a former wife of the man may be still living and there be no evidence of a divorce from her, the burden of proof to show the negative fact that there was no divorce being on the party who denies the validity of the second marriage.

FROM the circuit court of second district, Hinds county.

HON. ROBERT POWELL, Judge.

Mrs. Beardsley, the appellee, and one Mrs. Maud Staples were plaintiffs in the court below; the railway company, appellant, was defendant there. The declaration was a joint one by the two plaintiffs; it demanded damages for the wrongful killing of one Seth Marvin Beardsley who was killed in a collision between trains on appellant's railway, near Jackson, November 17, 1900; and it averred that plaintiff, Mrs. Beardsley, was the lawful wife and Mrs. Staples the lawful daughter of the decedent who was charged to have been a passenger on one of said trains. The plea was not guilty. On the trial it appeared, uncontradictedly, that the decedent first married a woman, one Frances Beardsley, the mother of Maud Staples, one of the plaintiffs, who was still living at Topeka, Kansas; that he afterwards married Mary Beardsley, the appellee, in the State of Missouri, and there was no evidence whatever of a divorce from the first wife. The court below peremptorily gave judgment for the defendant as against Maud Staples, but held that Mary Beardsley was entitled to have the case submitted to

a jury on the issues made, in respect to which the testimony was conflicting, as to whether the decedent was a passenger or trespasser on the train, and, if a trespasser, whether defendant's negligence was of such gross character as to entitle her notwithstanding to a verdict. The jury found for the plaintiff, Mary Beardsley, awarding her $9,000, and judgment was entered accordingly. The railway company appealed to the supreme court from the judgment against it, but Maud Staples did not appeal.

*Mc Willie & Thompson*, for appellant.

The declaration, which is the pleading of both of the joint plaintiffs, to the same extent as if either of them had made the same as sole plaintiff, alleges a right of action in Maud Staples, as the only legitimate child of the decedent. The mother of this legitimate child must necessarily have been the wife of the decedent, and when it came out in the testimony of Mary Beardsley that Maud was not her daughter, but the daughter of Frances Beardsley, the abandoned wife of the decedent, who was still living, there was no way whereby the plaintiff, Mary Beardsley, could show a right of action in herself without proving a divorce *a vinculo* of the decedent from Frances Beardsley. Mary's verbal statement on the witness stand as to the fact of a divorce was excluded, on the objection of the defendant, and the case then stood with the right of action, if any, outstanding in the mother of Maud, from whom it was not shown the decedent had ever been divorced.

With the case in this attitude, Mary Beardsley left the stand, but, on being recalled, was allowed to testify, over defendant's objection, that her knowledge of Beardsley's marriage to Maud's mother was hearsay, and that she had no personal knowledge on the subject. It is thus seen that, when the plaintiff failed to show a divorce from the wife, still living, she was allowed to negative her previous statement in reference to Frances Beardsley and to contradict the allegations of her own declara-

tion to the effect that Maud was the offspring of a previous valid marriage. We submit that this was not allowable. The court could not presume a divorce *a vinculo*, and such a divorce is an essential part of the proof of one who sues as the wife of a man who was the husband of another living woman. Mary Beardsley's pleadings set up a previous valid marriage, and she is bound by them. She never asked leave to amend or withdraw them, nor did she ask time to prove the divorce. The validity of the marriage to which Maud Staples owed her being was a judicial admission arising on the face of the declaration, the effect of which the plaintiff cannot evade at pleasure. 11 Am. & Eng. Enc. L., 391; George's Digest, title "Evidence," 19.

Litigants should not be allowed to take positions inconsistent with each other, and with the declaration in the case averring Maud Staples' legitimacy, Mary Beardsley should not have been allowed to dispute it. 11 Am. & Eng. Enc. L., 446.

After the court had admitted the testimony of Mrs. Beardsley going to dispute the previous marriage, the defendant asked her this question, which was excluded on the objection of the plaintiff: "You say he told you he had been married?" This question was competent, in view of the circumstances under which it was asked. *Wise* v. *Wynn*, 59 Miss., 588. But even with this question unanswered the plaintiff has shown no right to maintain the action as Beardsley's wife, for her declaration showed a previous valid marriage, and her testimony showed that the former wife was still living, and all evidence of a divorce had been excluded. The presumption in favor of the validity of a marriage ceases when it is seen that there existed a legal impediment to the marriage. When this impediment is a previous valid marriage to a person still living, the only legal presumption arising on the facts is that the status of the first wife continues to exist, and this presumption can only be overcome by proof of a divorce *a vinculo*.

The two Mississippi cases cited by the appellee on this head relate to the presumption of life which ceases after the lapse of a certain period, because of the casualties and bodily infirmities incident to all human life, together with its brevity—a reason which in no manner affects the question of divorce from a person known to be still alive. The divorce from the former wife, if any was ever granted, must be a matter of record, and the court will not presume the existence and contents of a record. Even if there was ever such a proceeding, the decree therein may not have been one which left the husband free to marry again. *Streeter* v. *Streeter*, 43 Ill., 155; *Com.* v. *Boyer*, 7 Allen (Mass.), 306; *State* v. *McElurray*, 3 Strobb. (S. C.), 33, 41.

The appellee is greatly in error when she urges that the question is one of distribution only. Apart from the question as to who is entitled to recover as widow, the measure of recovery would be different as between the appellee and the former wife. The former abandoned wife received nothing from the decedent towards her support, while the appellee claims to have derived her whole support from him. She is also mistaken in saying that this question of the validity of her marriage was suddenly sprung in the course of the trial. The appellee and the decedent were strangers to the defendant, who knew nothing about their domestic relations, but in the effort to learn something in advance of the trial, admonished the plaintiff, through cross interrogatories, when she proposed (as she did, but afterwards abandoned so doing) to testify by deposition, that her rights to recover as Beardsley's widow was under suspicion, to say the least, and would be zealously contested.

The court was right in directing a verdict for defendant as to Maud Beardsley, for, under the act of 1898, while she and her mother might have prosecuted the action in conjunction, yet if only one of them sued, her mother should have been the one, since the statute allows but one action for the same death, and in designating the persons who may bring it, recognizes

the widow's priority of right over her children, although it permits all persons interested to sue in one action. Laws 1898, p. 83.

[The counsel elaborately argued the other questions in the case, but as the opinion of the court touches them so slightly a synopsis of their argument upon them is omitted.]

*Brame & Brame* and *J. J. Jones*, for appellee.

In favor of the validity of a second marriage contracted by a woman while her first husband is alive, it will be presumed that the first marriage was legally dissolved before the second marriage was entered into, and one who asserts the invalidity of the latter marriage, must show that there had been no divorce. *Bouldin* v. *McIntyre*, 199 Ind., 574; *Blanchard* v. *Lambert*, 43 Ia., 228; *Carroll* v. *Carroll*, 120 Tex., 731.

In favor of the innocence and of the legitimacy of offspring, and because of other weighty considerations, the presumption of the validity of a marriage once shown to exist is so strong as to require of him who asserts its invalidity, on the ground that a former marriage has at one time existed, to show that there had been no divorce. In other words he must prove a negative. This is one of the few instances in law in which it is required that a negative shall be proven. *Hull* v. *Rawls*, 27 Miss., 471; *Spears* v. *Burton*, 31 Miss., 547 (14 Am. & Eng. Ency. L., 519–521); *Schimmisseur* v. *Beatrie*, 147 Ill., 210 (25 L. R. A., 477); *Hunter* v. *Hunter*, 31 L. R. A., 411 (S. C. 111 Cal., 261); *Johnson* v. *Johnson*, 114 Ill., 611.

It is immaterial that Maud Staples was, at the instance of defendant and over plaintiff's objection, eliminnted from the suit. The widow can maintain the suit in her own name and the only question will be as to the distribution of the damages. Maud Staples, as a child of deceased, will, of course, be entitled to her share of the damages, notwithstanding the action of the court. With the distribution of the damages the defendant has no concern.

[The counsel made an elaborate argument on the other issues in the case, but as the court passed upon them as a mere question of fact, a synopsis of the argument on them is not presented.]

Argued orally by *T. A. McWillie*, for appellant, and by *L. Brame*, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The law presumed the marriage of the appellee to be valid, in the absence of proof by appellant that there had been no divorce from the first wife, who was still living. This is a well settled rule. In *Schimmisseur* v. *Beatrie*, 147 Ill., 210, 214 (35 N. E., 525, 526), a precisely similar case, on this point the court said: " When a marriage has been solemnized according to the forms of the law, every presumption will be indulged in favor, of its validity. The presumption is one in favor of innocence, as it will be presumed that a man will not commit the crime of bigamy by marrying a second time while his first wife is living. *Johnson* v. *Johnson*, 114 Ill., 611; 3 N. E., 232; 55 Am. Rep., 883. Absence for seven years without being heard from creates the presumption of death. But the presumption in favor of the validity of marriage is so strong that a former husband or wife will be presumed to be dead after an absence of less than seven years. The ordinary presumption in favor of the continuance of human life is made to give way to the presumption in favor of the innocence of a second marriage. *Yates* v. *Houston*, 3 Tex., 433; *Johnson* v. *Johnson*, *supra*. In the present case, however, no presumption as to the death of Barbara Beatrie can be indulged in favor of the validity of the marriage with Margaret Hube, because the proof shows affirmatively that said Barbara was alive when said marriage took place, and for nine years thereafter. It is claimed, however, in behalf of appellees, that Nicholas Beatrie, Jr., will be presumed to have been divorced from his first wife before

he married the second one.   We have said that the courts ' will often presume a previous divorce in order to sustain the second marriage.'   *Cartwright* v. *McGown*, 121 Ill., 388; 12 N. E., 737; 2 Am. St. Rep., 105.   Bishop, in his work on Marriage, Divorce and Separation, says: ' In a general way, it is sufficiently established that to sustain a second marriage, a dissolution of a former one by divorce will be presumed; but a long living apart will not commonly create such presumption, and the authorities are not otherwise quite distinct as to the precise limits of the doctrine.'   Bish. on Mar., Div. & Sep., § 1145. The two marriages of Nicholas Beatrie, Jr., and the existence of the first wife at the time of the second marriage, being established by the proof, the presumption would arise in favor of a divorce from the first wife in order to sustain the second marriage.   In view of this presumption, the burden of proof rested upon the appellants, as the objecting parties, to show that there had been no divorce.   The law is so positive in requiring a party who asserts the illegality of a marriage to take the burden of proving it, that such requirement is enforced even though it involves the proving a negative."

As said by Elliot, J., in *Goodwin* v. *Smith*, 72 Ind., 113 (37 Am. Rep., 144), " When a negative is essential to the existence of a right, the party claiming the right has the burden of proving such negative."   The rule is thus stated in *Boulden* v. *McIntyre*, 119 Ind., 574; 21 N. E., 445; 12 Am. St. Rep., 453, in the syllabus: " In favor of the validity of a second marriage contracted by a woman while her first husband is alive, it will be presumed that the first marriage was legally dissolved by a divorce before the second was entered into, and one who asserts the invalidity of the latter marriage must show that there had been no divorce.   Where a negative is essential to the existence of a right, the party claiming the right has the burden of proving such a negative; hence. where one bases his claim to land upon the alleged invalidity of a marriage, he must, by proper proof, remove every presumption in favor of the

legality of the marriage, although to do·this he must prove a negative.'' To the same effect are *Hull* v. *Rawls*, 27 Miss., 471; *Spears* v. *Burton*, 31 Miss., 547, and many other authorities collated in brief of appellee's counsel.

The contention for the appellant that the appellee should have proven that there had been a divorce from the first wife is not sound.   Two of the cases cited by appellant's counsel hold merely that a divorce can only be proved by the record. The Massachusetts case is squarely in conflict with *Reg.* v. *Curgerwen*, L. R., 1 Cr. Cas. 1, and is put upon the ground that the defendant on trial for bigamy had peculiar knowledge whether he had been divorced, and hence should prove affirmatively that he had been—a rather curious line of reasoning as to the principle of evidence involved.

So far as estoppel from the declaration is concerned, it could have no further extent than to put the appellee in the attitude of averring that Mrs. Maud Staples was a legitimate child of Beardsley by a former legal wife.   But the very same principle above pointed out—that the law will presume, in favor of the innocence of a second marriage, that a former marriage had been dissolved by death or divorce, unless the party assailing the validity of the second marriage proves that there had been no death or divorce—applies to the like presumption in favor of the legitimacy of Mrs. Staples.   The estoppel, carried even to its extreme effect, does no more, at last, than bind appellee to the declaration that there had been a former valid marriage. The estoppel does not supply proof that there had been no divorce.   It leaves the case without any proof or estoppel by pleading to show no divorce.   It was doubtless error to have dismissed as to Maud Staples, but appellant was benefited by this, since, with her as coplaintiff, there would have been an element for damages, absent with her out.

The most careful reading of the testimony leaves us unable to concur with learned counsel for appellant in their contention that the jury had no evidence on which to find that Beardsley

was not a trespasser, or that the confessed negligence of appellant was willful.    Under the well settled rules of law, we think they might well have so found as to both propositions.    It would be difficult to imagine negligence grosser or more criminally reckless and willful than that of the conductor of the freight train.    We forbear further comment.

*Affirmed.*