In re Estate of Giuseppe Panico, Deceased.
In re Petition of Dr. G. Castruccio, Royal Italian
Consul General for the Kingdom of Italy, Appel-
lee, v. Bessie M. Panico, Appellant.

Gen. No. 36,107.

586

Heard in the second division of this court for the first district at the June term, 1932. Opinion filed December 30, 1932.

LEE D. MATHIAS, for appellant; CLYDE L. TODD, of counsel.

WALTER P. ALTENBURG, for appellee; ROBERT G. PHELPS, of counsel.

MR. PRESIDING JUSTICE KERNER delivered the opinion of the court.

This was a petition filed in the probate court of Cook county by Dr. G. Castruccio, Royal Italian Con-

sul General for the Kingdom of Italy, as attorney in fact for Concetta Panico and Mauro Panico, residents of Italy, praying that the letters of administration issued to Bessie M. Panico be revoked. The petition alleged, *inter alia,* that July 26, 1929, upon the petition of Bessie M. Panico, representing herself to be the widow of said Giuseppe Panico, letters of administration upon the estate of said Giuseppe Panico, deceased, were granted to said Bessie M. Panico; that said Giuseppe Panico died July 22, 1929, and left him surviving as his only heirs at law and next of kin Concetta Panico, his widow, and Mauro Panico, his son, and that said Bessie M. Panico is not his widow. Bessie M. Panico answered the petition averring, *inter alia,* the court was without jurisdiction except to dismiss the petition, and denied that Concetta Panico was the widow of said deceased, and averred that said Giuseppe Panico left him surviving Bessie M. Panico, as his widow, and Mauro his son, his only heirs at law and next of kin. After a hearing in the probate court the letters of administration were revoked. Bessie M. Panico appealed and the cause was tried *de novo* in the circuit court without a jury. The court found Giuseppe Panico, deceased, did not leave Bessie M. Panico surviving him as his widow, but that Concetta Panico, residing in Italy, was his widow, and that the letters of administration issued to Bessie M. Panico were issued upon the false pretense that she was the surviving widow of the deceased, and revoked the letters of administration. To reverse this order Bessie M. Panico has appealed.

The proof shows that the deceased was born in Pomigliano, d'Arco, a village near Naples, Italy, December 26, 1873, and came to America about 25 years ago. In the spring of 1912 he returned to Pomigliano, d'Arco, and there married Concetta d'Onofrio. The couple came to America and after residing in Chicago less than two years Concetta Panico returned to

Pomigliano, d'Arco, and there the son Mauro was born February 22, 1914. Both Concetta Panico and Mauro Panico continued to and did reside in Italy at the time of the death of Giuseppe Panico. The decedent and Concetta Panico never cohabited together after Concetta Panico returned to Italy, and the record does not disclose that Concetta Panico ever made any effort to assert any of her rights as his wife, and there is no evidence that Giuseppe Panico and Concetta Panico were not divorced.

The record further discloses that September 16, 1925, a marriage ceremony was performed between the decedent and appellant, at Crown Point, Indiana, by a justice of the peace, who certified to the fact of the marriage. Thereafter and up to the time of the death of Giuseppe Panico they lived together as husband and wife at 2122 W. 63rd street, Chicago, where he conducted a grocery store. It also appears that he studied for the priesthood before coming to America and had a good education and that several witnesses had testified his reputation as a law abiding citizen was good. Two of appellant's witnesses also testified that in 1923 or 1924, and again in 1926 or 1927, the deceased said that the mother of his son was dead.

It is contended that the court was without jurisdiction to revoke the letters of administration issued to appellant, and she argues that some other proceeding should have been instituted where the whole merits could be fully investigated. In this view we cannot concur for the reason that the power of the probate court to make findings of heirship was expressly conferred upon the court by ch. 3, ¶¶ 146, 147 and 148, Cahill's Ill. Rev. St. 1931, p. 73. See also *Welch v. Worsley,* 330 Ill. 172, 176. The probate court has original jurisdiction of all probate matters and the settlement of estates of deceased persons. It had authority to appoint the appellant administratrix, and had the power to remove her and revoke her letters

only for the causes mentioned in the statute. (*Healea v. Verne,* 343 Ill. 325, 329.) One of the causes being "where the same were granted . . . upon any . . . false pretense whatever." (Ch. 3, ¶ 27, Cahill's Ill. Rev. St. 1931, p. 57.) In the instant case the probate court issued the letters *ex parte* to the appellant because she claimed she was the surviving widow of the deceased. By his petition appellee claimed she was not the widow. The sole fact in issue therefore was whether appellant was the widow of Giuseppe Panico, and when the court found that she was not his widow, the revocation of the letters for the false pretense that she was followed as a matter of course. (*Healea v. Verne, supra,* 329.)

It is also contended by appellant that the marriage between the decedent and Concetta d'Onofrio was not proven by any competent and satisfactory evidence, and that strict proof of the marriage was required. This was a civil action, and record evidence of the marriage was not required. In civil cases marriage may be proved by reputation, declarations and conduct of the parties, and other circumstances usually accompanying that relation. (*Western Coal & Mining Co. v. Industrial Com.,* 296 Ill. 408, 411.) That a marriage was solemnized between the decedent and Concetta d'Onofrio, in due form of law, in the spring of 1912, is clearly and satisfactorily proven. The solemnization of the marriage was followed by their living together as husband and wife, in Italy and in Chicago until 1914, when Concetta Panico returned to Italy where their son Mauro was born. There was no evidence to the contrary, and no effort was made to prove any facts and circumstances as establish its invalidity. Upon the facts shown in this record we are of the opinion that there can be no question that appellee has proven a valid marriage between the decedent and Concetta d'Onofrio (*Lyman v. People,* 198 Ill. 544, 548), and that she was alive on September 16, 1925,

the date of the marriage ceremony between the decedent and the appellant as well as at the date of his decease.

The principal question which is presented for our consideration is, Was the court warranted in finding that Concetta Panico is the widow of decedent? It is true that where a valid marriage is shown, a presumption exists that the status of that marriage continues (*Cartwright v. McGown,* 121 Ill. 388, 395), and it is also the law that in the absence of evidence to the contrary, a first marriage will be presumed to have been terminated by death or divorce prior to the time of a second marriage by one of the parties, because the law presumes that the parties in contracting a marriage, and in subsequently cohabiting, were innocent of immorality or crime, and that there was no legal impediment to its consummation (*Johnson v. Johnson,* 114 Ill. 611, 617; *Cole v. Cole,* 153 Ill. 585), but such a presumption is not conclusive. (*Johnson v. Johnson, supra.*) The second marriage being shown, the law raises a strong presumption in favor of its legality, and casts the burden upon the one attacking the second marriage of proving that one of the parties to the second marriage had not been divorced from his or her former spouse before the second marriage. (*Potter v. Clapp,* 203 Ill. 592; *Winter v. Dibble,* 251 Ill. 200, 206.) In other words, the law is so positive that it requires a party who asserts the illegality of a marriage to take the burden of proving it, notwithstanding it involves the proof of a negative. (*Schmisseur v. Beatrie,* 147 Ill. 210; *Coal Run Coal Co. v. Jones,* 127 Ill. 379, 386; *Jones v. Gilbert,* 135 Ill. 27, 31; *Crysler v. Crysler,* 330 Ill. 74, 77.) And the presumption is not overcome by mere proof of a prior marriage and that one of the parties thereto had not obtained a divorce, because the other party to such prior marriage may have obtained such divorce, thus

terminating the marriage. Plenary proof, however, is not required to rebut such presumption, as the law is satisfied with a less quantity of proof; evidence which renders the existence of the negative probable is sufficient, in the absence of proof to the contrary. (*Prentice v. Crane,* 234 Ill. 302; *In re Estate of Dedmore,* 257 Ill. App. 519, 522; certiorari denied 261 Ill. App. XLVII.) In the instant case, the testimony shows that the decedent resided in Chicago continually from 1914 to the date of his death, and no divorce could have been lawfully granted to him in any other place than in Cook county during this period. The appellee attacks the validity of the marriage ceremony between the decedent and the appellant, and the burden is upon him to show that there was no divorce, which may be shown by evidence that the records of the courts have been searched where such decree should be found, if it existed at all, and that they show no such divorce. No testimony was introduced by appellee showing any examination of the records and files of the courts having chancery jurisdiction in Cook county for the purpose of proving that no divorce had been granted to the decedent.

After a careful examination of the record we regret to say that we must hold that the evidence was insufficient to overcome the presumption that decedent and Concetta Panico were divorced prior to his marriage to appellant, and the trial court was, upon this state of the record, in error in finding that Concetta Panico was the surviving widow of decedent. While it is evident that the appellee did not present sufficient evidence to make out his case, nevertheless, we are convinced that justice demands that appellee be given another opportunity to supply the defect in the proof.

Accordingly the order of the circuit court is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

SCANLAN and GRIDLEY, JJ., concur.