### Fredericka Senge v. Emma Maria Paulina Senge.

1. HUSBAND AND WIFE—*He Who Asserts the Illegality of a Marriage Must Prove It.*—The law is so positive in requiring a party who asserts the illegality of a marriage to take the burden of proving it, that such requirement is enforced even though it involves the proving of a negative.

2. FRATERNAL INSURANCE—*To Whom Death Benefits May be Made Payable.*—Section 258, Chapter 73, R. S., provides that "Payments of death benefits shall only be made to the families, heirs, blood relations, affianced husband or affianced wife, or to persons dependent upon the member."

Bill of Interpleader.—Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902. Reversed and remanded. Opinion filed February 13, 1903.

This was a bill of interpleader filed by the Gross Loge des Deutschen Orden der Harugari, an Illinois corporation The bill sets forth, in substance, that the complainant had issued to August Senge, who died on May 8, 1901, while a member of said order in good standing, a beneficiary certificate which named as beneficiary his wife, Fredericka Senge, who resides in Chicago, and is made a defendant, and that the other defendant, Emma Maria Paulina Senge, who resides in Germany, claimed to have been the lawful wife of the said August Senge since 1875, and to be entitled to the full amount called for, on the ground that the designation of Fredericka Senge as beneficiary was null and void. The complainant signifies its willingness to pay over the money, and asks the court to determine which defendant is entitled to the same. Both defendants answered, and subsequently the Orden der Harugari paid the money ($700) into court, and by interlocutory decree was discharged out of the case, which was then heard on the answers of the two claimants.

CYRUS J. WOOD and STEPHEN JANOWICZ, attorneys for appellant.

FRED PLOTKE, attorney for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of appellee that it appears from the evidence introduced, and from what it was conceded appellee, who lives in Germany, would swear to if her deposition should be taken, that appellant, Fredericka Senge, came from Germany in 1892 in company with the deceased, August Senge, she leaving her husband, and knowing that he was leaving a wife behind, and that the two lived together as man and wife before as well as after the performance of a marriage ceremony between them in 1894, neither of them having been legally separated from their former marriage relations. The question here presented does not involve inquiry into the morality of the conduct of appellant and the deceased, Senge, before their marriage. She herself testifies positively that she did not run away from Germany with August Senge, had no immoral relations with him before their marriage, that she was advised that her first husband was divorced from her and married again, before she married Senge, and that she never heard until a year or two before his death, that August Senge had ever been married before he married her.

The beneficiary certificate issued by the Order to August Senge provides that "the person or persons who are specified in this certificate, in case of his death are entitled to five hundred dollars, which amount should be paid to his wife, Fredericka Senge." It appears here that a formal marriage ceremony had been performed between appellant and the deceased, purporting to unite them in the relation of husband and wife; that they were living together in that relation, and were so recognized generally among their friends and acquaintances. Indeed it is not denied that the deceased intended to and did designate appellant and no one else as the beneficiary under that certificate.

The constitution and by-laws of the Order provide for payment in the event of the member's death "to such person or persons which the aforesaid demised brother has mentioned in his certificate, but these may be only the following named persons, namely: wife, children, blood relatives, or

such persons who were dependent upon the support of the brother."

Assuming that appellant may not have been the lawful wife of the deceased when she was named as beneficiary in his certificate, she is doubtless included within the description of "such persons who were dependent upon the support of the brother." The testimony upon this point is that during the time appellant lived with the deceased they lived together as husband and wife; that the deceased had a saloon, and they lived by that; that appellant had no other means of support; that she helped him in his business and cared for him when sick. These facts are undisputed, and they clearly show that she was dependent upon him in fact for support to the same extent that a lawful wife or other member of a man's household is ordinarily so dependent. It is conceded by appellee's counsel that the deceased " had the right to name any one as beneficiary within the classes specified by the statute." The statute of this state provides (R. S., Chap. 73, Sec. 258) that "payment of death benefits shall only be made to the families, heirs, blood relations, affianced husband or affianced wife, or to persons dependent upon the member."

It is urged, however, that appellant is not included, because it is claimed that she did not live with him in good faith, believing herself to be his wife; that appellee had an insurable interest only in case she had no knowledge or notice of a former marriage of her pretended husband, and that the wife of such first marriage was living, and not legally divorced. " The law is so positive in requiring a party who asserts the illegality of a marriage to take the burden of proving it, that such requirement is enforced, even though it involves the proving of a negative." Schmisseur v. Beatrie, 147 Ill. 210–215. It is evident that, in the case at bar, the appellee has not proved by a preponderance of legal evidence that the marriage in 1894 between deceased and appellant was not legal and valid, such as to meet the requirement of the law in this respect. The burden was upon appellee to show by competent evidence that

the deceased, if lawfully married to her, had not himself been lawfully divorced; that some legal impediment actually existed at the time on the part of one or both the parties, appellant and the deceased, which made their marriage in 1894 illegal. It would be enough to change the *onus probandi* in the absence of all counter testimony to introduce such evidence as would afford reasonable ground for presuming that the marriage was illegal. (Schmisseur v. Beatrie, *supra*, p. 217.) But in this case material facts necessary to be established are either not attempted to be proved or are denied. No reason appears why appellant's testimony should not receive equal credit with that of appellee, especially in matters upon which she is not contradicted. In the case above cited it was said that two marriages having been proved, and the existence of the first wife at the time of the second marriage, there must be a presumption in favor of a divorce from the first wife. Here there must be a presumption in favor of a divorce from their first marriage by both appellant and the deceased, the burden of overcoming which rests upon appellee. She says she had obtained no divorce from Senge, but he may have obtained one from her in this country, and as to that no proof is attempted. The claim that appellant knowingly lived with the deceased as his mistress is not, we think, sustained by this record.

We are compelled to conclude that she is entitled to the fund in controversy, and that the decree must be reversed, and the cause remanded for further proceedings not inconsistent with the views we have expressed.