## ESSICK *et al.* *v.* ESSICK.

(Division B.   April 20, 1936.)

[167 So. 420.   No. 32207.]

**Grayson B. Keaton,** of Picayune, and **Hall & Hall,** of Columbia, for appellants.

**J. M. Morse,** of Poplarville, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Mary Essick, appellee, was married, on July 28, 1928, to John Essick, the marriage being by a ceremony duly solemnized, and she lived with said John Essick until 1931, when she filed suit for a divorce which never came to an issue and was never tried. John Essick died in 1931, and on October 6, 1931, Eliza Essick and Charles Essick, the mother and brother of John Essick, filed a proceeding in chancery to establish a nuncupative will, to which suit a demurrer was filed and sustained. Mary Essick, the appellee, then filed the present suit to secure possession of the property, a house and lot in Pearl River county, owned by John Essick, alleging that she had assisted, with her personal earnings, in constructing the house while married to him.

The appellants filed an answer to this suit alleging that Mary Essick was not lawfully married to John Essick, because she had formerly married Cleve Williams, in Tallulah, La., and had lived with him as his wife for some years, and that Cleve Williams was sent to the penitentiary in the year 1921, and that no divorce had ever been secured either by Mary Essick, at the

time of her marriage to John Essick, or by Cleve Williams, and that less than seven years had elapsed between the time Cleve Williams was sent to the state penitentiary and Mary Essick's second marriage.

The appellee, Mary Essick, was introduced as an adverse witness and testified that she had never secured a divorce from Cleve Williams; that she had been informed and understood that Cleve Williams was dead prior to her marriage to John Essick. She testified that she had secured this information from the brother of Cleve Williams who lived in Hattiesburg, Miss., and who had been so informed by a sister of himself and Cleve Williams, which sister lived in Alabama. Mary Essick further testified that she believed Cleve Williams was dead; that she had never heard from him since he was sent to the penitentiary.

Archie Williams, the brother of Cleve Williams, testified that he had never heard from Cleve Williams since he was sent to the penitentiary; that he received a letter from Cleve Williams from Greenfield, Miss. (near the Rankin county penitentiary at that time); that he sent Cleve Williams some money in a letter but it was returned to him, and that, thereafter, he has not heard from Cleve Williams; that after said time he received a communication from his sister stating that Cleve Williams was dead; and that he gave this information to Mary Essick before her marriage to John Essick. Archie Williams also testified that he lived in Hattiesburg from the time his brother was sent to the penitentiary, working in the Tatum Lumber Company there, and that he never heard from or saw his brother during said period of time.

The appellants introduced Olivia Fortenberry, and Mary Essick, the wife of Charles Essick (not the appellee), Agnes Porter and Jennie Hutton, who claimed that the appellee told them, subsequent to her marriage to John Essick, that she was not divorced and that she

did not need a divorce because Cleve Williams had been sent to the penitentiary.

The appellants also introduced Andrew Davis and Cleo Washington, who lived in Hattiesburg, and who testified that Cleve Williams returned to Hattiesburg in 1926 and remained there until 1929 when he left, and they did not know where he was and they could give no further information as to him.

There was no proof, other than as stated, as to where Cleve Williams lived or in what place he may have established his domicile before the appellee was married to John Essick.

The chancellor found for the appellee, canceled the claims, and decreed possession of the property to her.

It is urged that the evidence was insufficient to support the decree of the chancellor; that less than seven years had elapsed from the date Cleve Williams was sent to the penitentiary and the date of the appellee's marriage to John Essick; and that no presumption of death would be applicable in the case. It is urged further that death could not be presumed because of the testimony of Andrew Davis and Cleo Washington that Cleve Williams was seen in Hattiesburg prior to the marriage between appellee and John Essick.

We think the chancellor was authorized in finding, as he did, that the second marriage was lawful. It is true that less than seven years had elapsed between the time Cleve Williams was sent to the penitentiary and said marriage, but it was understood by his family that Cleve Williams was dead, and there is no showing that any of the members of his family knew anything of him during said period. The chancellor was warranted, under the evidence, in believing that the testimony of Andrew Davis and Cleo Washington was untrue. Archie Williams, as stated, testified that he lived and worked in Hattiesburg, and that he never heard from or saw his brother, and it is reasonable to think that if Cleve Williams had ever been in Hattiesburg, as testified by An-

drew Davis and Cleo Washington, Archie Williams would have known of it and would have seen him. It would be highly probable that Cleve Williams, if he served out his sentence and returned to Hattiesburg, would have sought out his brother, and it would be remarkable if the brothers had been living in Hattiesburg for three years and had not seen each other during said period.

The appellants argue that we should take judicial notice of the penitentiary records, and that it would appear therefrom that the said Cleve Williams was discharged from the penitentiary on December 22, 1925. We do not take judicial notice of penitentiary records showing the admission and discharge of prisoners, and there is no basis for us to entertain any such knowledge. This court can only take judicial notice of what every other court could know. If such was the fact, and was material to the issue, the appellants should have proven it as any other fact. See Naul v. McComb City, 70 Miss. 699, 12 So. 903; Henry v. Sunflower County, 111 Miss. 434, 71 So. 742; Sparks v. City of Jackson, 118 Miss. 502, 79 So. 67; Globe Rutgers Fire Ins. Co. v. Sayle, 107 Miss. 169, 65 So. 125; Cuney Grand Lodge, C. A. F. & A. M. et al. v. State, 142 Miss. 894, 108 So. 298.

We think the court below was warranted in finding as a fact, and its decree will be upheld on the theory that th evidence was sufficient to support his finding, that the marriage was valid because of the death of Cleve Williams, although there was insufficient proof to show that a divorce had been obtained by Cleve Williams or Mary Essick.

In 4 Encyc. of Evidence, p. 50, it is said that circumstantial evidence is admissible to prove death, and that the fact of a person's death may be proved by the reputation among his relatives and friends that he is dead.

In the case of Howard v. Kelly, 111 Miss. 285, 71 So. 391, Ann. Cas. 1918E, 1230, this court held that where a second ceremonial marriage, that is, one solemnized according to the forms of law, is contracted, every presump-

tion will be indulged in favor of its validity and the burden of proof is upon him who claims rights inconsistent with such presumption; and that the presumption of the validity of a marriage ceremonially contracted will overcome the presumption that the first spouse was living.

In Hickman v. Hickman, 126 Miss. 469, 89 So. 6, this court held that the presumption of the validity of the second marriage will entirely overcome the presumption that the first husband was alive when the second marriage was contracted, and though the wife has not been divorced from her first husband, the presumption of the validity of her second marriage will continue until it is made to appear that her first husband is alive.

See, also, McAllum v. Spinks, 129 Miss. 237, 238, 91 So. 694; Ladner v. Pigford, 138 Miss. 461, 103 So. 218; Alabama & V. Ry. Co. v. Beardsley, 79 Miss. 417, 30 So. 660, 89 Am. St. Rep. 660, and Harper v. Fears, 168 Miss. 505, 151 So. 745, 93 A. L. R. 341.

We are therefore of the opinion that there was no error in the holding of the court below.

Affirmed.